UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRASS WORKS LAWN CARE, LLC<br>6901 Ranch Road 620 N<br>Austin, Texas 78732<br><br>J F LUNA CONSTRUCTION, LLC<br>4212 Adobe Drive<br>Killeen, Texas 76542<br><br>TITUS WORKS, LLC<br>11320 Taylor Draper Lane<br>Austin, Texas 78701<br><br>       Plaintiffs<br><br>v.<br><br>R. ALEXANDER ACOSTA, Secretary<br>United States Department of Labor<br>200 Constitution Avenue, N.W.<br>Washington, DC 20210<br><br>ROSEMARY LAHASKY, Deputy Assistant Secretary<br>Employment and Training Administration<br>United States Department of Labor<br>200 Constitution Avenue, N.W.<br>Washington, DC 20210<br><br>WILLIAM THOMPSON, Administrator<br>Office of Foreign Labor Certification<br>United States Department of Labor<br>200 Constitution Avenue, N.W.<br>Washington, DC 20210<br><br>      Defendants | Civ. No.<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, GRASS WORKS LAWN CARE, LLC, J F LUNA CONSTRUCTION, LLC, and TITUS WORKS, LLC, through undersigned counsel, file the instant Complaint against Defendants, R. ALEXANDER ACOSTA, Secretary, U.S. Department of Labor; ROSEMARY LAHASKY, Deputy Assistant Secretary, Employment and Training Administration, U.S.

Department of Labor; and WILLIAM THOMPSON, Administrator, Office of Foreign Labor

Certification, U.S. Department of Labor, as follows:

## I. PREFATORY STATEMENT

1.     This is an action brought pursuant to Section 10b of the Administrative Procedure

Act, 5 U.S.C. § 702, and 28 U.S.C. § 1331, seeking review of decisions[1] by Defendants, the U.S.

Department of Labor ("DOL") and the DOL's Employment and Training Administration

("ETA") Office of Foreign Labor Certification ("OFLC"), denying the Plaintiffs' request for

certification of Forms ETA 9142B Application for Temporary Employment Certification

("Temporary Employment Certification"), which sought  determinations that a sufficient number

of able, willing, qualified, and available U.S. workers were not available to fill the job

opportunities for which certification was requested, in accordance with 20 C.F.R. Part 655,

Subpart A. Such certification would permit the Plaintiffs to file Form I-129 Petition for

Nonimmigrant Workers with U.S. Citizenship and Immigration Services ("USCIS") in order to

obtain approval of their petition to hire temporary non-agricultural foreign workers ("H-2B

status") to meet Plaintiff's peakload need, pursuant to Section 101(a)(15)(H)(ii) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(H)(ii). The decisions at issue

---

[1] Specifically, Grass Works Lawn Care, LLC seeks review of the December 20, 2017 OFLC decision denying its Temporary Employment Certification Application, the January 23, 2018 BALCA decision partially affirming the OFLC denial and February 12, 2018 BALCA decision affirming the OFLC denial on Motion for Reconsideration, *see* Exhibit ("Exh.") 1 to this Complaint; J F Luna Construction, LLC seeks review of the January 1, 2018 OFLC decision denying its Temporary Employment Certification Application and the February 8, 2018 BALCA decision affirming the OFLC denial, *see* Exh. 2; Titus Works, LLC seeks review of the December 25, 2017 OFLC decision denying its Temporary Employment Certification Application and the January 30, 2018 BALCA decision affirming the OFLC denial, *see* Exh. 3. BALCA issued additional decisions related to the Grass Works Lawn Care, LLC appeal and the Titus Works LLC appeal of the OFLC decisions, but those decisions rested solely on procedural matters irrelevant to the substantive claims at issue in the instant Complaint. A searchable database of BALCA decisions can be found at https://www.oalj.dol.gov/LIBINA.HTM.

were affirmed on administrative appeal by the DOL's Board of Alien Labor Certification Appeals ("BALCA"). Defendants' decisions are arbitrary, capricious, contrary to law and past agency practice, and unsupported by substantial evidence. Consequently, Plaintiffs seek an order reversing or remanding the agency denials, and any other remedy available by law.

2.      The H-2B nonimmigrant visa program permits employers to hire foreign workers to perform temporary non-agricultural labor or services in the United States on a one-time occurrence, seasonal, peakload, or intermittent basis, as defined by the United States Department of Homeland Security ("DHS").[2] *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. § 214.2(h)(6); 20 C.F.R. § 655.6(b).  In general, for purposes of the H-2B program, work is of a "temporary" nature where the employer's need for the worker will last no longer than one year.[3]  Employers who seek to hire foreign workers under this program must apply for temporary employment certification from DOL using Form ETA 9142B, *Application for Temporary Employment Certification* ("Form 9142B") along with certain documentation in support of the number of workers and the duration of the employment requested.  A Certifying Officer ("CO") in OFLC reviews the applications for temporary employment certification, and may issue a Notice of Deficiency ("NOD") if the CO requires further information to adjudicate the application.  20 C.F.R. § 655.31.

---

[2] Since 2010, USCIS and DOL have faced various challenges in federal court regarding the scope and validity of H-2B regulations. In light of the complexity of the litigation, DOL and DHS jointly issued a new set of interim regulations governing the H-2B program in April 2015. 8 Fed. Reg. 24,042-144 (Apr. 29, 2015), 80 Fed. Reg. 24,146-201 (Apr. 29, 2015).

[3] The definition of temporary need is governed by 8 C.F.R. § 214.2(h)(6)(ii), in accordance with the agreement discussed *supra* n. 2. and set forth in the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Division H, Title I, § 113 (2015). This definition has remained in place through subsequent appropriations legislation, including the current continuing resolution. Further Extension of Continuing Appropriations Act, 2018, Pub. L. No. 115-123, Division B, Title XII, Subdivision 3, § 20101 (2018). *See H&H Tile and Plaster of Austin, Ltd.*, 2018-TLN-00049, slip op. at 2 (Feb. 16, 2018).

3.     If the ETA-9142 application for temporary employment certification is certified by DOL, the sponsoring employer may then use that certification to file an I-129 Petition for Nonimmigrant Worker with USCIS requesting H-2B status for the number of workers certified on the ETA-9142. If the CO denies an application for temporary employment certification under 20 C.F.R. § 655.53, the sponsoring employer may request review of that decision by an Administrative Law Judge ("ALJ") at BALCA.  20 C.F.R. § 655.61.

4.     Each of the DOL decisions at issue (both the OFLC decisions denying the temporary employment certifications and the BALCA decisions sustaining the OFLC denials) concluded generally that Plaintiffs had not provided OFLC sufficient evidence of the need for the specified number of temporary peakload employees and/or for the duration of time requested, and specifically that Plaintiffs had failed to produce "summarized monthly payroll reports" as necessary evidence supporting the temporary peakload need.[4]

5.     In each of the instant cases, the CO issued an NOD to the employer requesting such summarized monthly payroll reports, among other additional supporting documentation, and in each case, the Plaintiffs provided responsive documentation, including alternative payroll evidence consisting of IRS Form 941 Quarterly Payroll Reports and State Workforce Quarterly Payroll Reports, to demonstrate temporary peakload need. In each case, both the CO and the ALJ found the Plaintiffs' failure to produce the summarized monthly payroll reports to be unexcused, and concluded that Plaintiffs had not provided sufficient evidence of the need for temporary

---

[4] *See Grass Works Lawn Care, LLC* December 20, 2017 OFLC decision at 4-6, January 23, 2018 BALCA decision at 9, and February 12, 2018 BALCA decision at 4; *J F Luna Construction, LLC* January 1, 2018 OFLC decision at 8 and February 8, 2018 BALCA decision at 6-7; *Titus Works, LLC* December 25, 2017 OFLC decision at 5 and 9, and January 30, 2018 BALCA decision at 8.

peakload workers. In each case, the temporary employment certification was denied by OFLC, and in each case BALCA sustained the denial decision.

6.      These DOL decisions are arbitrary, capricious, contrary to law and past agency practice, and unsupported by substantial evidence, because (1) Defendants deviated from settled agency practice by insisting upon one specific form of documentation in support of the temporary employment certification applications that is not specified by regulation, not required to determine the employers' actual need for temporary peakload employees, had not been required to adjudicate and approve past applications, and was requested to cover inconsistent periods of time; (2) the decisions to deny temporary employment certifications are based on the Plaintiffs' failure to produce one specific form of evidence, even though information sufficient to determine whether Plaintiffs had a need for temporary peakload workers was available in the alternative evidence that was provided by the Plaintiffs in each case and ignores relevant evidence in the record; and (3) assuming the requested payroll summary reports *are* the only means by which Defendants can determine the Plaintiffs' stated need for temporary peakload employees, Defendants failed to inform Plaintiffs that such specific evidence was now indispensable in order to adjudicate applications for temporary employment certification, and that alternative evidence would not be acceptable to demonstrate the need for temporary peakload workers. Because Defendants' decisions are flawed as a matter of procedure, law, and evidence, they merit reversal or remand by this Court.

7.      The agency's actions have caused – and will continue to cause – irreparable harm to the Plaintiffs. Plaintiffs are companies that engage in construction and landscaping projects that are concentrated in – but not strictly limited to – warmer months with longer daylight hours. The work is labor-intensive. Plaintiffs lack the workers they need to complete the construction

and landscaping projects they have agreed to complete for their clients, despite their best efforts to locate and hire workers in the U.S. labor market. This labor shortfall renders Plaintiffs unable to fulfill current contracts, or to secure contracts for additional or continuing construction and landscaping projects. When Plaintiffs' contracted projects are neglected – as is occurring now – the clients who have hired Plaintiffs' businesses must cancel those contracts and seek other businesses to complete the projects, which damages the Plaintiffs' businesses, reputations, and ultimately harms its U.S. workers. These problems worsen with each passing day.

8.      Plaintiffs request limited discovery to ascertain the agency's grounds for repeatedly denying the Plaintiffs' temporary employment certification applications for failure to provide specific evidence not previously required for adjudication. *See Voyageurs National Park Assoc. v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004) (where an incomplete administrative record may "frustrate effective judicial review," the court may allow discovery to supplement the agency record); *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (extra-record investigation may be appropriate where it is necessary to determine the reasons for the agency's choice). As discussed in greater detail in Section VI.B., *infra*, Defendants historically had accepted various forms of documentation to demonstrate temporary peakload need.

## II. <u>JURISDICTION</u>

9.      This is a civil action brought pursuant to 5 U.S.C. §701 *et seq.*, the Administrative Procedure Act ("APA"), and 28 U.S.C. § 1331 (federal question jurisdiction), as well as 8 U.S.C. § 1101 *et seq.*, the Immigration and Nationality Act ("INA"). Original jurisdiction is vested in this Court by 28 U.S.C. § 1329 (jurisdiction of the district courts), 28 U.S.C. § 1346(a)(2) (civil actions against the United States), and 28 U.S.C. § 2201 (declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiffs.

A.      **Subject Matter Jurisdiction**

10.      Under the APA, "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA provides further that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action includes the denials of Applications for Temporary Employment Certification filed pursuant to 20 C.F.R. §§ 655.1, *et seq*. These actions by the DOL are reviewable because they are inconsistent with the agency's own legal standards and settled practice. *See, e.g., Heckler v. Chaney,* 470 U.S. 821, 833 (1985) (holding that administrative agencies are not "free to disregard legislative direction in the statutory scheme that the agency administers"); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414 (1971) ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements."). The standards to be applied on review are governed by 5 U.S.C. §706. *Heckler,* 470 U.S. at 828.

11.      The APA does not independently provide a basis for subject matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 107 (1977). However, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that arises under a right of action created by the APA. *Sharkey v. Quarantillo,* 541 F.3d 75, 84 (2d Cir. 2008) ("Because Section 1331 confers jurisdiction on the district courts, a suit that arises under the APA is properly brought in district court."); *Bowen v. Massachusetts,* 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if

review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331."). *See also Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Security,* 769 F.3d 1127, 1138-39 (D.C. Cir. 2014) ("This court has previously recognized that the general federal-question statute confers [federal court] jurisdiction over a similar challenge brought under the Immigration and Nationality Act.... [T]he district court had jurisdiction to hear Fogo de Chao's challenge.") *(citing Abourezk v. Reagan,* 785 F.2d 1043, 1050 (D.C. Cir. 1986)).

12.    Under the APA, federal courts review administrative actions to determine whether the agency acted arbitrarily or capriciously or abused its discretion. *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009) (citing 5 U.S.C. § 706(2)(A)). The requirement that agency action not be arbitrary and capricious includes an obligation that the agency "examine the relevant data and articulate a satisfactory explanation for its action[.]" *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983). Moreover, the agency must take appropriate steps to explain its actions in a manner "that will enable the court to evaluate the agency's rationale" at the time of its decision. *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 654 (1990).

13.    Two well-established canons of statutory construction also support the Court's assertion of subject matter jurisdiction. *See Kucana v. Holder,* 558 U.S. 233, 251 (2010) (noting that "executive determinations generally are subject to judicial review"). First, congressional intent to limit a court's jurisdiction must be "clear and convincing" in order to preclude judicial review. *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 63-64 (1993); *Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.,* 502 U.S. 32, 44 (1991). Second, there is a "strong presumption" in favor of judicial review of administrative acts. *INS v. St. Cyr,* 533 U.S.

289, 298 (2001); *Kucana,* 558 U.S. at 241. These principles support the Court's assertion of subject matter jurisdiction to review the Plaintiffs' claims.

14.     Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As the present action is not an action to review a removal order but an action challenging decisions by the Defendant DOL to deny applications for temporary employment certification, which denials were arbitrary, capricious, and contrary to law and settled practice, this Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. § 2201.

15.     8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" Because denial of a temporary employment certification application is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original jurisdiction over this claim. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b), 8 C.F.R. § 214.2(h)(6).

16.     Furthermore, 8 U.S.C. §1252(a)(2)(B)(ii) does not divest the Court of jurisdiction to review DOL's denials of Plaintiffs' H-2B temporary employment certification applications. As the Supreme Court has explained, in enacting 8 U.S.C. § 1252(a)(2)(B)(ii)

"Congress had in mind ... those [agency decisions] made discretionary by legislation." *Kucana,* 558 U.S. at 246-47. Consequently, the jurisdiction-stripping provision applies only to the "narrower category of decisions where Congress has taken the additional step to *specify* that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Att'y Gen. of U.S.,* 456 F.3d 88, 95 (3d Cir. 2006) (emphasis added). Absent "clear and convincing evidence" of congressional intent specifically to eliminate review of certain administrative actions, the above-cited principles of statutory construction support a narrow reading of the jurisdiction-stripping language at 8 U.S.C. § 1252(a)(2)(B)(ii). *Kucana,* 558 U.S. at 252; *see also Obioha v. Gonzales,* 431 F.3d 400, 405 (4th Cir. 2005) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) should be interpreted narrowly where the narrower interpretation is as likely as the broader interpretation).

17.     The statutory provisions authorizing DOL to grant or deny temporary employment certification applications nowhere specify that the agency's decision is "in the discretion" of the Secretary of Labor. *Compare, e.g.,* 8 U.S.C. § 1101(a)(15)(H)(ii)(b) *with* 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, *in his discretion ...* to that of an alien lawfully admitted for permanent residence[.]") (emphasis added). Had Congress intended to strip the courts of authority to review inherently – as opposed to specifically – discretionary decisions by the agency regarding immigration matters, it could have clearly indicated its intent. *See Kucana,* 558 U.S. at 248; *McNary v. Haitian Refugee Center,* 498 U.S. 479, 484 (1991).

18.     Here, unlike in the adjustment of status context, Congress did not do so. Without such a clear statement of intent, the Court should not find that Congress meant to divest the federal judiciary of such fundamental power. In addition, DOL has promulgated regulations and

10

practices – discussed in Section V.A., *infra* – that guide its adjudication of temporary employment certification applications, and which provide the Court the necessary standard for judicial review of the agency's action under the APA. *See, e.g., M.B. v. Quarantillo,* 301 F.3d 109, 113-14 (3d Cir. 2002) (finding that regulations governing adjudication of certain visa petitions, coupled with agency field guidance, provided sufficient guidance for judicial review of agency action).

**B.      Standing**

19.      Because Plaintiffs have suffered an injury in fact – the erroneous denial of their temporary employment certification applications and consequent inability to employ qualified temporary workers, resulting in a substantial loss of revenue and threatening permanent and ongoing harm to their businesses and industry reputation —Plaintiffs have standing to complain. *See*, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing requires a plaintiff to show (1) an injury-in-fact, (2) a causal connection between the injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision). Plaintiffs have standing as they have  "'alleged such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A favorable decision by this Court – reversing the agency's temporary employment certification denials as arbitrary, capricious, contrary to law, and not supported by substantial evidence – would grant Plaintiffs the relief that they seek. *See Wilderness Society v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) ("The redressability inquiry poses a simple question: If plaintiffs secured the relief they sought ... would [it] redress their injury?").

### C.    Finality, Ripeness, and Exhaustion

20.    The January 23, 2018, January 30, 2018, and February 8, 2018 decisions of the BALCA ALJs constitute "final agency action" for purposes of APA review. *See* 5 U.S.C. §704. The decisions "mark the consummation of the agency's decisionmaking process" and are actions "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)(internal citations omitted).

21.    Determining ripeness of administrative action for judicial review demands an evaluation of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003). Plaintiffs' claims are fit for judicial decision because the disputes present legal questions and there is a "concrete dispute" between the parties. *Id.* at 812. Furthermore, the Plaintiffs will continue to suffer significant hardship if no court reviews the agency denials.

22.    The erroneous denials by DOL of Plaintiffs' temporary employment certification applications, and Plaintiffs' consequent inability to employ the workforce it needs during its busiest season, is highly likely to result in a substantial loss of earnings and threatens permanent and ongoing harm to the Plaintiffs' businesses and industry reputation. There is "no other adequate remedy in a court" for the Plaintiffs' claims. 5 U.S.C. § 704. Moreover, the mere opportunity to submit new temporary employment certification applications, and obtain decisions on those applications, would not relieve the hardship caused by this Court withholding consideration of the Plaintiffs' claims that the agency's denials were erroneous and should be reversed. *See Sharkey v. Quarantillo,* 541 F.3d 75, 90 (2d Cir. 2008).

23.     Plaintiffs have exhausted all available administrative remedies, although exhaustion is not expressly required by statute or agency rule. *Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993). The regulation governing administrative appeals of temporary employment certification applications provides that "employers *may* request an administrative review before the BALCA of a determination by the CO." 20 C.F.R. § 655.61 (emphasis added). Plaintiffs have sought BALCA review of their denied temporary employment certification applications, and BALCA has issued decisions on each administrative appeal request.  Plaintiffs have no adequate remedy outside of this court.

### III. <u>VENUE</u>

24.     Venue is proper in this district under 28 U.S.C. § 1391(e), because this is an action against officers and agencies of the United States in their official capacities, brought in the district where the Defendants reside and no real property is involved in the action.

### IV. <u>PARTIES</u>

25.     Plaintiffs are corporate entities engaged in construction and landscaping projects that are concentrated in warmer months with longer daylight hours, in and around central Texas. Each Plaintiff filed at least one temporary employment certification application with the DOL, for purposes of obtaining H-2B nonimmigrant visas, based on their documented temporary employment needs, to employ a specific number of temporary non-agricultural workers for a designated period of time, as authorized under the governing regulations. Each Plaintiff's temporary employment certification application was denied, and BALCA ALJs sustained each denial on appeal.  All Plaintiffs seek the same form of relief.  The Federal Rules of Civil Procedure provide that persons may be joined in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction,

13

occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action. *See Fed. R. Civ. P.* 20(a)(1), *see also* Rules of the United States District Court for the District of Columbia, Local Civil Rule 40.5 (Related Cases).

A.    GRASS WORKS LAWN CARE, LLC ("Grass Works") is a landscape installation and maintenance business based in Austin, Texas that filed a Form 9142B application with the DOL on October 4, 2017 seeking certification for 40 temporary peakload employees from January 23, 2018 to November 23, 2018.  Grass Works seeks review of the December 20, 2017 OFLC decision denying its Temporary Employment Certification Application and the January 23, 2018 and February 12, 2018 BALCA decisions affirming the OFLC denial.

B.    J F LUNA CONSTRUCTION, LLC ("J F Luna") is a construction business based in Killeen, Texas that filed a Form 9142B application with the DOL on November 8, 2018 seeking certification for 10 temporary peakload employees from January 23, 2018 to November 23, 2018.  J F Luna seeks review of the January 1, 2018 OFLC decision denying its Temporary Employment Certification Application and the February 8, 2018 BALCA decision affirming the OFLC denial.

C.    TITUS WORKS, LLC ("Titus Works") is a commercial underground utility construction business based in Austin, Texas that filed a Form 9142B application with the DOL on November 7. 2017 seeking certification for 5 temporary peakload employees from January 23, 2018 to November 23, 2018. Titus Works seeks review of the December 25, 2017 OFLC decision denying its Temporary Employment Certification Application and the January 30, 2018 BALCA decision affirming the OFLC denial.

26.     The Defendant R. ALEXANDER ACOSTA is Secretary of the U.S. Department of Labor. This suit is brought against Secretary Acosta in his official capacity, as he is charged with overseeing the adjudication of H-2B applications for temporary employment certification.

27.     The Defendant ROSEMARY LAHASKY is Deputy Assistant Secretary of the Employment and Training Administration within the U.S. Department of Labor. This suit is brought against Deputy Assistant Secretary Lahasky in her official capacity.

28.     The Defendant WILLIAM THOMPSON is Acting Administrator, Office of Foreign Labor Certification within the U.S. Department of Labor. This suit is brought against Acting Administrator Thompson in his official capacity.

## V. FACTS AND PROCEDURAL HISTORY

### A.     H-2B Temporary Nonagricultural Worker Program

29.     As discussed generally in Section I, *supra*, the H-2B temporary nonagricultural worker program permits employers to bring foreign nationals to the United States to fill temporary nonagricultural jobs where there are not sufficient domestic workers who are able, willing, qualified, and available to perform such services or labor. *See* 8 C.F.R. § 214(2)(h)(1)(ii)(D). Prior to submitting an I-129 Petition for nonimmigrant workers to work on a temporary basis under the H-2B visa program, an employer must file an ETA-9142B Application for Temporary Employment Certification with the DOL's Employment and Training Administration ("ETA"). 20 C.F.R. § 655.20. The procedures by which DOL acquires information sufficient to make these certifications are set forth at 20 C.F.R. §§ 655.1 – 655.73.

30.     Following compliance with certain pre-filing procedures set forth at 20 C.F.R. §§ 655.10-655.13, an employer who seeks to hire H-2B temporary nonagricultural workers must apply for certification by filing Form ETA 9142B, Application for Temporary Employment Certification.

20 C.F.R. § 655.15. The form requires the employer to disclose the nature and duration of the needed employment, its efforts to recruit U.S. workers, as well as information about the employer, the job offer, and the salary. *See* Form ETA 9142B, *available at* https://www.foreignlaborcert.doleta.gov/pdf/ETA_Form_9142B.pdf (last visited June 6, 2018).

31.     The proper filing of an Application for Temporary Employment Certification triggers a mandatory duty on the part of an OFLC Certifying Official ("CO") to review the application for compliance with  20 C.F.R. §655.30.

32.     If the CO determines that the application is "incomplete, contains errors or inaccuracies, or do[es] not meet the requirements set forth" in the regulations, he or she will issue a Notice of Deficiency ("NOD") to the employer identifying the reasons why the CO believes the application fails to meet the criteria and offering the employer a limited amount of time (typically 10 days) to respond. 20 C.F.R. § 655.31. Upon receipt of a response to an NOD, including any modifications, the CO will review the response and may issue one or more additional NODs before rendering a decision.  20 C.F.R. § 655.32(a).  Applications are properly denied where an employer fails to supply requested information in response to an NOD. *Id.*

33.     If the application for temporary employment certification is certified by DOL, the sponsoring employer may then use that certification to file with USCIS a petition for nonimmigrant H-2B visa status on behalf of specific workers. If the CO denies an application for temporary employment certification under 20 C.F.R. § 655.53, the sponsoring employer may request review of that decision by BALCA.  20 C.F.R. § 655.61. An Administrative Law Judge ("ALJ") at BALCA decides the appeal and must affirm, reverse, or modify the CO's determination, or remand the case to the CO for further action. 20 C.F.R. § 655.61(e).

34.     If the OFLC certifies Form ETA 9142B, the employer may then file Form I-129 Petition for a Nonimmigrant Worker with USCIS, to petition for foreign national beneficiaries to come to the United States as nonimmigrant (H-2B) workers to perform services or labor on a temporary basis.

35.     After USCIS approves Form I-129, prospective H-2B workers who are outside the United States must either apply for an H-2B visa with the U.S. Department of State at a U.S. Embassy or Consulate abroad and then seek admission to the United States from U.S. Customs and Border Protection ("CBP") at a U.S. port of entry, or they may seek admission directly at a U.S. port of entry.

**B.     Procedural History: Plaintiffs' Temporary Employment Certification Applications, OFLC Adjudications, and BALCA Decisions on Administrative Appeal**

*1.     Grass Works Lawn Care LLC*

36.     Plaintiff Grass Works filed a Form 9142B application for temporary employment certification on October 30, 2017, requesting certification of 40 temporary peakload landscaping and groundskeeping workers from January 23, 2018 to November 23, 2018.   Along with the Form 9142B, and among other supporting documentation, Grass Works included signed statements explaining the need for a change (from previous years) in the 2018 peakload need dates and number of workers requested from the prior December 23, 2016 DOL certification for 30 temporary peakload employees from February 15, 2017 to November 15, 2017.

37.     On November 6, 2017, the OFLC CO adjudicating the temporary employment certification application issued Grass Works an NOD ("November 6 NOD") stating that it was "unclear why the number of workers requested has increased from the previous certification" and requesting, among other items, the following:

> *Summarized monthly payroll reports for a minimum of one previous calendar year* that identify, for each month and separately for full-time permanent and temporary employment in the requested occupation, the total number of workers or staff employed, total hours worked, and total earnings received ... And ... [o]ther evidence and documentation that similarly serves to justify the increase in the number of workers from the employer's prior application ... if any.

November 6 NOD at 4 (emphasis added). *See* Exh. 1. The CO similarly requested summarized monthly payroll reports in support of the requested dates of need.

38.     Ten days later, on November 17, 2017, Grass Works responded to the NOD with documentation that included, among other items, its federal quarterly tax returns (IRS Form 941), Texas Workforce Commission ("TWC") wage and staffing reports, and summary graphs based on the federal and state quarterly reports. On December 20, 2017, 33 days after receiving the response, the CO denied the temporary employment certification application ("December 20 Decision"). In its December 20 Decision, the CO noted that instead of summarized monthly payroll reports, Grass Works had submitted quarterly tax reports, which are "not useful" in determining the employer's "proper peakload months" or "requested number of workers." December 20 Decision at 5, 6. Grass Works filed a notice of appeal of the December 20 Decision to BALCA.

39.     On January 23, 2018, BALCA ALJ Scott R. Morris issued a decision partially affirming the December 20 Decision ("January 23 Decision"). The ALJ found that the CO "reasonably concluded that Employer's documentation did not justify its 2018 request for an increased number of workers and extended period of need vis-à-vis its 2017 application." January 23 Decision at 5. Although the ALJ acknowledged that "an employer can substantiate its need for workers through alternative documentation," he concluded that Grass Works' "failure to provide detailed payroll records *prevents ... a meaningful analysis* of [Grass Works'] labor needs over and above its prior 2017 application." *Id.* at 8-9 (emphasis added).

40.    On February 12, 2018, the ALJ issued another decision, granting the CO's Motion for Reconsideration, and also affirming the December 20 Decision ("February 12 Decision"). Although the ALJ stated "[a]t the outset, however, this Tribunal notes that it is troubled by the ambiguity in the CO's determination," the ALJ ultimately found that the "shortcomings" in Grass Works' documentation "are as fatal to Employer's entire 2018 application as they were to the alleged increased degree of need from 2017 to 2018. … Employer's other submitted documentation does not independently prove its alleged 2018 temporary need." February 12 Decision at 4.

### 2.    *J F Luna Construction, LLC*

41.    Plaintiff J F Luna filed a Form 9142B application for temporary employment certification on November 8, 2017, requesting certification of 10 temporary peakload cement masons and concrete finishers from January 23, 2018 to November 23, 2018.  Along with the Form 9142B, and among other supporting documentation, J F Luna included a signed statement explaining the need for a change (from previous years) in the 2018 peakload need dates.

42.    On November 17, 2017, the OFLC CO adjudicating the temporary employment certification application issued J F Luna an NOD ("November 17 NOD") stating that it was "not clear if the employer experiences a true peak in *its* business during the requested dates of need, and if the employer experiences a slowdown in business during its nonpeak dates," and requesting, among other items, the following:

> *Summarized monthly payroll reports for 2016 and up-to-date 2017* that identify, for each month and separately for full-time permanent and temporary employment in the requested occupation, the total number of workers or staff employed, total hours worked, and total earnings received … And … [o]ther evidence and documentation that similarly serves to justify the standard of need and dates of need being requested for certification.

November 17 NOD at 5 (emphasis added). *See* Exh. 2. The CO similarly requested summarized

monthly payroll reports in support of the number of workers requested to be certified. *Id.* at 6-7.

43. On December 1, 2017, J F Luna responded to the NOD ("December 1 NOD

Response") with documentation that included, among other items, its January 12, 2017 and

February 4, 2016 temporary employment certifications for 10 cement masons and concrete

finishers, federal quarterly tax returns (IRS Form 941), TWC wage and staffing reports, and

summary graphs based on the federal and state quarterly reports. J F Luna also noted that certain

information requested in the November 17 NOD "does not exist in the normal course of business

for the employer; therefore, J F Luna Construction is submitting available responsive

information." December 1 NOD Response at 3. On December 20, 2017, J F Luna requested that

OFLC amend its dates of need from January 23, 2018 through November 23, 2018 to February 6,

2018 through November 9, 2018, as permitted under 20 C.F.R. §§ 655.35.

44. On January 1, 2018, 30 days after receiving the response, the CO denied the

temporary employment certification application ("January 1 Decision"). In its January 1

Decision, among other concerns, the CO noted that "[a]lthough the employer did submit a single-

page staffing graph, it did not submit the summarized payroll requested in the NOD for 2016 and

up-to-date 2017…. The staffing documentation submitted is not sufficient in establishing the

employer's intended dates of need." January 1 Decision at 5. The CO similarly determined that

the "staffing and payroll documentation submitted is not sufficient to establish the employer's

need for workers on the date requested." *Id.* at 8. The CO did not address the employer's request

to amend its dates of need. J F Luna filed a notice of appeal of the January 1 Decision to

BALCA, along with an appeal brief, and submitted an additional brief on February 7, 2018.

45.     On February 8, 2018, BALCA ALJ Clement J. Kennington issued a decision affirming the January 1 Decision ("February 8 Decision"). The ALJ found that "[w]ithout the requested signed and attested summarized monthly payroll reports … *it is not possible* to determine the base-line production of permanent employee cement masons and concrete finishers on a full-time basis, which is needed to establish if there are periods of demand that cannot be met by the Employer's permanent cement masons and concrete finishers." February 8 Decision at 6 (emphasis added). The ALJ similarly found that "*it is not possible* to determine the need for augmentation of the permanent cement masons and concrete finishers work force with the H-2B cement masons and concrete finishers" without summarized monthly payroll reports, and affirmed the CO's January 1 Decision. *Id.* at 6-7 (emphasis added).

### 3.     *Titus Works, LLC*

46.     Plaintiff Titus Works filed a Form 9142B application for temporary employment certification on November 4, 2017, requesting certification of 5 temporary peakload construction laborers from January 23, 2018 to November 23, 2018. Along with the Form 9142B, and among other supporting documentation, Titus Works included a signed statement explaining the need for a change (from previous years) in the 2018 peakload need dates, and the prior January 3, 2017 certification for 5 temporary peakload construction laborers from February 15, 2017 to November 15, 2017.

47.     On November 14, 2017, the OFLC CO adjudicating the temporary employment certification application issued Titus Works an NOD ("November 14 NOD") stating that Titus Works had not justified its need for temporary workers for the dates requested, and requesting, among other items, the following:

> *Summarized monthly payroll reports for a minimum of three previous calendar years* that identify, for each month and separately for full-time permanent and

temporary employment in the requested occupation, the total number of workers
or staff employed, total hours worked, and total earnings received … And …
[o]ther evidence and documentation that similarly serves to justify the dates of
need being requested for certification, if any.

November 14 NOD at 5 (emphasis added). *See* Exh. 3.

48.     On November 28, 2017, Titus Works responded to the NOD ("November 28

NOD Response") with documentation that included, among other items, its January 16, 2013,

November 26, 2013, December 1, 2014, March 24, 2016, and January 3, 2017 temporary

employment certifications for 5 construction laborers, federal quarterly tax returns (IRS Form

941), TWC wage and staffing reports, and summary graphs based on the federal and state

quarterly reports. Titus Works also noted that certain information requested in the November 14

NOD "does not exist in the normal course of business for the employer; therefore, Titus Works is

submitting available responsive information." November 28 NOD Response at 3. On December

20, 2017, Titus Works requested that OFLC amend its dates of need from January 23, 2018

through November 23, 2018 to February 6, 2018 through November 9, 2018, as permitted under

20 C.F.R. §§ 655.35.

49.     On December 25, 2017, 27 days after receiving the response, the CO denied the

temporary employment certification application ("December 25 Decision"). In its December 25

Decision, among other matters, the CO noted that "[a]lthough the employer did submit a single-

page staffing graph, it did not submit the summarized payroll requested in the NOD for a

minimum of three previous calendar years. … The staffing and payroll documentation submitted

is not sufficient to establish the employer's need for workers on the date requested." December

25 Decision at 5.   The CO also noted that the "employer's [sic] attempted to establish its

peakload need based solely on past certifications; however … prior participation in the program

alone does not establish the employer's temporary need for workers." *Id.*   The CO did not

address the employer's request to amend its dates of need, and denied the temporary employment

certification. *Id.* at 9.  Titus Works filed a notice of appeal of the December 25 Decision to

BALCA, and filed an appeal brief on January 24, 2018.

50.      On January 30, 2018, BALCA ALJ Richard M. Clark issued a decision affirming

the December 25 Decision ("January 30 Decision"). Notably, the ALJ referenced a 2012

BALCA decision regarding an employer's use of alternative evidence in response to an NOD:

> [W]here an employer explains why it cannot produce the requested information
> and provides alternative evidence, it is an abuse of discretion for the CO to deny
> certification without considering whether such alternative evidence is sufficient to
> carry the employer's burden. *International Plant Services, LLC*, 2013-TLN-
> 00014, slip op at 6 (Dec 21, 2012).

January 30 Decision at 7. The ALJ also acknowledged Titus Works' assertion that certain

requested information "does not exist in the normal course of business for the employer." *Id.*

Notwithstanding, the ALJ found the alternative evidence submitted by Titus Works "insufficient

to establish Employer's temporary need for the requested dates," *id.,* and affirmed the CO's

December 25 decision. *Id.* at 8.

51.      Following Defendants' January 23, 2018, January 30, 2018, and February 8, 2018

decisions, Plaintiffs filed this action.

## VI. <u>CAUSE OF ACTION</u>

52.      Plaintiffs incorporate by reference the allegations of the foregoing paragraphs of

the Complaint as if fully set forth herein.

53.      Plaintiffs allege three grounds for relief. First, Defendants deviated from long-

settled agency practice by insisting upon one specific form of documentation (summarized

monthly payroll records) in support of the Plaintiffs' temporary employment certification

applications, which documentation is not specified by regulation, is not required to determine the

employer's actual need for temporary peakload employees, was not required to adjudicate and approve Plaintiffs' past applications, and was requested for inexplicably inconsistent periods of time in the NODs at issue.  Second, the decisions to deny temporary employment certifications based on Plaintiffs' failure to produce a specific form of evidence – even though information sufficient to determine whether Plaintiffs had a need for temporary peakload workers was available in the alternative evidence provided by the Plaintiffs in each case – amounts to an abuse of discretion because Defendants have ignored relevant evidence in the record. Third, even assuming that summarized monthly payroll reports are the only means by which Defendants can determine the Plaintiffs' stated need for temporary peakload employees, Defendants' failure to inform Plaintiffs that such specific evidence is now required in order to adjudicate the application for temporary employment certification, and that alternate evidence would not be sufficient to demonstrate the need for temporary peakload workers, was arbitrary and capricious and an abuse of discretion.

**A.     Standards for H-2B Applications**

54.     The statutory and regulatory provisions governing the H-2B program include 8 U.S.C. § 1101(a)(15)(H)(ii)(b), which sets forth the parameters of the H-2B visa category, and 8 C.F.R. § 214.2(h)(6) and  20 C.F.R. §§ 655.1-655.73, which govern the temporary employment certification process and other aspects of the admission of temporary H-2B workers.

55.     8 U.S.C. § 1101(a)(15)(H)(ii)(b) defines H-2B workers as foreign nationals "coming temporarily to the United States to perform other temporary service or labor."

56.     8 C.F.R. § 214.2(h)(6)(iii) provides that H-2B visa petitions may not be approved unless the employer applies to the Secretary of Labor for a certification that there are not sufficient workers who are capable and available to perform the labor or services involved in the

petition, and the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

57.     The Department of Labor has promulgated regulations governing the temporary employment certification process. 20 C.F.R. §§ 655.1 *et seq*. Relevant regulations for purposes of this action include 20 C.F.R. § 655.6 ("Temporary need"), § 655.15 ("Application filing requirements"); § 655.31 ("Notice of deficiency"); and § 655.32 ("Submission of a modified application or job order").  A prior version of the DOL H-2B regulations specified that all Applications for Temporary Employment Certification "include attestations regarding temporary need in the appropriate sections." 20 C.F.R.  §  655.21(a). Section 655.21(a) specifically instructed employers to include a detailed statement of temporary need containing: (1) a description of the employer's business history and activities (i.e., primary products or services) and schedule of operations throughout the year; (2) an explanation regarding why the nature of the employer's job opportunity and number of foreign workers being requested for certification reflect a temporary need; and (3) an explanation regarding how the request for temporary labor certification meets one of the regulatory standards of a one-time occurrence, seasonal, peakload, or intermittent need, as defined by the Department of Homeland Security.

58.     An applicant for a temporary employment certification at DOL must establish that *its* need for nonagricultural services or labor is temporary, regardless of whether the underlying job is permanent or temporary, 20 C.F.R. § 655.6(a), and the need is considered temporary if justified to the CO as a one-time occurrence, a seasonal need, a peakload need, or an intermittent need, "as defined by DHS regulations." 20 C.F.R. § 655.6(b).

59.     DHS regulations at 8 C.F.R. § 214.2(h)(6)(ii)(A) similarly specify that H-2B "temporary services or labor" are "any job in which the petitioner's need for the duties to be

performed by the employee(s) is temporary, whether or not the underlying job can be described as permanent or temporary." When assessing whether proposed H-2B employment is of a temporary nature – as it must be under 8 U.S.C. § 1101(a)(15)(H)(ii)(b) – the DOL follows *Matter of Artee Corporation*, 18 I&N Dec. 366 (Comm'r 1982). In *Artee*, the Commissioner for the Immigration and Naturalization Service ("INS")[5] held that the test for determining whether a foreign national is coming "temporarily" to the United States to perform temporary services or labor is whether the *need of the employer* for the duties to be performed is temporary. *Id.* at 367. *Artee* reversed a long-standing INS rule according to which the functional nature of the duties of the job controlled its characterization. *Matter of Contopoulos*, 10 I&N Dec. 654 (Acting R.C. 1964). *Artee* clarified, "[i]t is not the nature or the duties of the position which must be examined to determine the temporary need. It is the nature of the need for the duties to be performed which determines the temporariness of the position." *Artee*, 18 I&N Dec. at 367.

60.     Regarding an employer's peakload need, 8 C.F.R. § 214.2(h)(6)(ii)(B)(3) specifies that the H-2B petitioner "must establish that it regularly employs permanent workers to perform the services or labor at the place of employment and that it needs to supplement its permanent staff at the place of employment on a temporary basis due to a seasonal or short-term demand and that the temporary additions to staff will not become a part of the petitioner's regular operation." BALCA decisions have held that, for an employer to utilize the peakload standard, the employer must employ permanent workers in the occupation. *See, e.g., Masse Contracting*, 2015-TLN-00026 (April 2, 2015).

---

[5] Pursuant to the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002), the Immigration and Naturalization Service has ceased to exist, and its enforcement functions have been transferred to the Department of Homeland Security.

**B.    Defendants' Decision to Depart from Precedent and Require Summarized Monthly Payroll Reports For Peakload Applications Was Arbitrary and Capricious**

61.    Defendants deviated from long-settled agency practice by insisting that Plaintiffs provide one specific form of documentation (summarized monthly payroll reports) in support of the Plaintiffs' temporary employment certification applications, which documentation is not specified by regulation or agency practice, and was requested for inexplicably inconsistent periods of time in the applicable NODs for each Plaintiff.

62.    Temporary employment certification applicants are not required to provide any specified documentation in support of the temporary need described in the applications – indeed, the regulations are silent as to the specific documents that must be submitted to demonstrate any sort of temporary need, including peakload need.[6] *See* 20 C.F.R. § 655.15. The only documentary requirements set forth by regulation for filing an Application for Temporary Employment Certification are the Form ETA 9142B and its appendices, a valid DOL Prevailing Wage Determination ("PWD"), a job order from the State Workforce Agency that complies with the requirements and assurances set forth in 20 C.F.R. §§ 655.16 and 655.18, and copies of any contracts or agreements with an employment agent or recruiter. *See* 20 C.F.R. § 655.15(a). Although 8 C.F.R. § 214.2(h)(6)(ii)(B)(3) requires the employer to establish that it "regularly employs permanent workers to perform the services or labor at the place of employment and that it needs to supplement its permanent staff at the place of employment on a temporary basis due

---

[6] Although the H-2B regulations do not specify documentary evidence that must be submitted to demonstrate any sort of temporary need, both DOL and USCIS over time have issued relevant guidance. *See, e.g, ETA's Announcement of Procedural Change to Streamline the H-2B Process for Non-Agricultural Employers: Submission of Documentation Demonstrating "Temporary Need"* (Sep. 1, 2016) ("September 2016 Guidance"), at https://www.foreignlaborcert.doleta.gov/pdf/FINAL_Announcement_H-2B_Submission_of_Documentation_Temporary_Need_082016.pdf.

to a seasonal or short-term demand," no regulation specifies documents the employer must provide to establish the permanent employees or the peakload need.

63.     Furthermore, while the COs had requested summarized monthly payroll reports in the NODs issued for each of the referenced applications, each request specified a different period of time that the payroll reports should cover: In *Grass Works*, the CO requested summarized monthly payroll reports "for a minimum of one previous calendar year;" in *J F Luna*, the CO requested summarized monthly payroll reports "for 2016 and up-to-date 2017;" and in *Titus Works*, the CO requested summarized monthly payroll reports "for a minimum of three previous calendar years." It is arbitrary and capricious, and an abuse of discretion, to require specific documentation to support peakload need across a range of applications, but to request that documentation for highly inconsistent periods of time.

64.     The "requirement" to produce summarized monthly payroll reports is an abrupt change from the agency's settled practice of reviewing temporary employment certification applications in the context of prior certifications. As recently as September 2016, ETA encouraged applicants to *refrain* from overburdening the CO with documentation substantially similar to that provided in prior years:

> [M]any employers submit additional documentation (e.g., summarized monthly payroll records, monthly invoices, executed work contracts) with the Form ETA-9142B, to demonstrate that the job opportunity is temporary in nature and represents bona fide, full-time employment during the period of employment.
>
> The Department notes that many employers use the H-2B visa program on a predictable and recurring, seasonal business cycle, and these job opportunities were previously granted labor certification. Thus, the nature of the need for the services to be performed has been and may continue to be determined temporary. *The additional documentation submitted by many employers, which is substantially similar from year-to-year for the same employer or a particular industry, creates an unnecessary burden for employers as well as the CO, who must review all documents submitted with each application.*

> To reduce paperwork and streamline the adjudication of temporary need, effective immediately, an employer *need not submit* additional documentation at the time of filing the Form ETA-9142B to justify its temporary need.
> …
> The CO will review the employer's statement of temporary need as well as its recent filing history (if applicable) to determine whether the nature of the employer's temporary need on the application meets the standard for temporary need under the regulations.

*See* September 2016 Guidance, *supra* n. 6 (emphasis added).

65.     When an agency changes course without offering a thorough analysis or explanation for the change, its resulting decision may be found arbitrary and capricious and subject to reversal under the APA. *Lone Mountain Processing v. Sec'y of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013); *Ramaprakash v. Fed. Aviation Admin.*, 346 F.3d 1121, 1124-25 (D.C. Cir. 2003). Of course, agencies are permitted to alter past rulings and practices, but such a departure requires the agency to "display awareness that it *is* changing position" and not to "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)(emphasis in original). Reasoned decision-making obligates the agency to acknowledge and provide an adequate explanation for its departure from established precedent. *Id.* ("The agency must show that there are good reasons for the new policy."). *See also INS v. Yang*, 519 U.S. 26, 32 (1996)(If an agency "announces and follows – by rule or by settled course of adjudication – a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned.")

66.     Because Defendants offered no explanation or justification for their abrupt requirement that Plaintiffs provide summarized monthly payroll reports, even though such reports are not required by regulation or past agency practice, and because Defendants provided no notice to Plaintiffs that summarized monthly payroll reports would be the only documentation

29

OFLC would accept to demonstrate peakload need, Defendants' decisions are arbitrary and capricious.

## C.    The Agency Abused Its Discretion By Ignoring Evidence in the Record

67.    The DOL's decisions to deny temporary employment certifications based on the Plaintiffs' failure to produce a specific form of evidence, even though such evidence was not required to determine the employers' actual need for temporary peakload employees, where information sufficient to determine whether Plaintiffs had a need for temporary peakload workers *was* available in the alternative evidence provided in each case, and where such evidence had not been required to adjudicate and approve Plaintiffs' past applications, amounts to an abuse of discretion and fails substantial evidence review.

68.    In *Grass Works*, the ALJ acknowledged that "an employer can substantiate its need for workers through alternative documentation," but concluded that Grass Works' failure to provide summarized monthly payroll records "prevents … a meaningful analysis" of Grass Works' peakload need. January 23 Decision at 8-9.  In *J F Luna*, the ALJ found that "it is not possible" to determine the need to supplement permanent employees without summarized monthly payroll reports.  February 8 Decision at 6-7.  In *Titus Works*, the ALJ found the alternative evidence submitted by Titus Works to be "insufficient to establish Employer's temporary need for the requested dates." January 30 Decision at 8.

69.    In fact, summarized monthly payroll reports are *not* required to determine the Plaintiffs' peakload need, despite the COs' and ALJs' assertions to the contrary.  COs routinely certified Plaintiffs' temporary employment certification applications – without summarized payroll records – before 2017, and some ALJs have even reviewed and found alternative evidence sufficient to demonstrate peakload need.  In *Jose Uribe Concrete Construction*, 2018-

30

TLN-00040 (Feb. 2, 2018), slip op. at 15, the ALJ remanded for a grant of certification a CO's

denial decision that was based, in part, on the employer's failure to provide summarized monthly

payroll reports.    On review of the alternative evidence provided, including quarterly tax

summaries, bar graphs and charts of the number of workers employed on a monthly basis, letters

of intent and signed contracts for future construction work, and evidence of prior certifications –

evidence strikingly similar to that supplied in each of the Plaintiffs' cases – the ALJ concluded

that the documentation submitted by the employer "is sufficient to establish that it has a

permanent workforce of approximately eight employees which it is supplementing with

temporary workers through the H-2B program." *Jose Uribe*, at 14. Although the ALJ stated that

each application must stand on its own merits, *id.* at 13, he also noted the context of four prior

certifications, and explained his decision as follows:

> I find the information and documentation provided by the Employer pertaining to
> the number of workers employed each month for the two previous years is
> sufficiently specific to establish that it has a permanent workforce which it is
> supplementing through the H-2B program, especially in light of the fact that this
> is the fifth year that certification has been requested, with the four previous years
> resulting in grants of certification, for very similar periods of need.  ... I will
> therefore presume that the certifying office provided its usual thorough review of
> the four prior applications for the years 2014 through 2017, and reached a
> documented conclusion that the Employer did in fact have a permanent workforce
> which it was supplementing through the H-2B program."

*Id.* at 14.  The *Jose Uribe* decision demonstrates that an employer's application for temporary

employment certification *can* justify a peakload need without summarized monthly payroll

reports and through alternative evidence, particularly where the CO has certified temporary

employment certifications in the recent past for a similar number of workers and period of need.

70.    Grass Works had filed temporary employment certification applications for

employees that were certified by OFLC – without the requirement for summarized monthly

payroll reports – in 2016 (for 8 employees) and 2017 (for 30 employees).  J F Luna had filed

temporary employment certification applications for 10 temporary peakload employees that were certified by OFLC – without the requirement for summarized monthly payroll reports – in 2016 and 2017.   Titus Works had filed temporary employment certification applications for five temporary peakload employees that were certified by OFLC – without the requirement for summarized monthly payroll reports – in 2013, 2014, 2015, 2016, and 2017.   Although past approvals cannot be relied upon as the sole support for a current application, it is arbitrary, capricious, and contrary to settled agency practice to base a denial on failure to provide one type of documentation where ample alternative documentation has been supplied and peakload need has been established in prior OFLC certifications.

71.     The *Jose Uribe* decision also underscores the agency's abuse of discretion in denying an application where alternative evidence has been provided to support a peakload need. As noted in *International Plant Services, LLC*, 2013-TLN-00014, slip op. at 6 (Dec. 21, 2012), "where, as here, the employer explains why it cannot produce the requested documentation and provides alternative evidence, it is an abuse of discretion for the CO to deny certification without considering whether such alternative evidence is sufficient to carry the employer's burden."

72.     Agency factual findings are reviewed under the substantial evidence standard. 5 U.S.C. §706; *Kappos v. Hyatt*, 566 U.S. 431, 435 (2012). Such findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. *Gomis v. Holder*, 571 F.3d 353, 359 (4th Cir. 2009). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(*citing Consolidate Edison Co. v. NLRB*, 305 U.S. 197,229 (1938)). The court is to "canvass[] 'the whole record' in order to ascertain" whether evidence in the record "fairly detracts from its weight." *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488 (1951). The requirement that agency action not be arbitrary and capricious includes an obligation that the agency "examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983) (citing *Burlington Trucking Lines v. U.S.*, 371 U.S. 156, 168 (1962)). "While the substantial-evidence standard of review is generous, it is not boundless; it does not allow an agency to close its eyes to on-point and uncontradicted record evidence without any explanation at all." *Fogo de Chao (Holdings), Inc., v. U.S. Dep't of Homeland Security*, 769 F.3d 1127, 1147 (D.C. Cir. 2014).

73.    Here, Defendants failed to consider alternative documentation demonstrating Plaintiffs' peakload need, and in doing so, Defendants did precisely what the D.C. Circuit explained the substantial evidence standard of review forbids: they "close[d] [their] eyes to on-point and uncontradicted record evidence without any explanation at all." *Id.*

**D.    Defendants' Failure to Inform Plaintiffs That Summarized Monthly Payroll Reports Are the Only Means by Which Defendants Can Determine Peakload Need Was Arbitrary and Capricious and an Abuse of Discretion.**

74.    Assuming, *arguendo,* that the summarized monthly payroll reports *are* the only means by which Defendants can determine the Plaintiffs' stated need for temporary peakload employees, Defendants' failure to inform Plaintiffs that such specific evidence was now required in order to adjudicate an application for temporary employment certification, and that alternate evidence would not be sufficient to demonstrate the need for temporary peakload workers, was arbitrary and capricious and an abuse of discretion. The CO could have – but elected not to – issue a second NOD to Plaintiffs, in order to afford them a reasonable opportunity to obtain and submit the requested summarized monthly payroll reports. *See* 20 C.F.R. § 655.32(a).

75.      As noted above, when an agency changes course without offering a thorough analysis or explanation for the change, its resulting decision may be found arbitrary and capricious and subject to reversal under the APA. *Lone Mountain Processing*, 709 F.3d at 1164; *Ramaprakash,* 346 F.3d at 1124-25.

76.      Furthermore, as the Supreme Court has explained, "agency action must be based on non-arbitrary, 'relevant factors'" that "must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." *Judulang v. Holder*, 565 U.S. 42, 55 (2011). A fundamental issue in cases like this – where the CO maintains that an H-2B application cannot be certified because the employer failed to provide one specific form of payroll record out of many alternative forms of evidence that could be supplied – is whether the H-2B applicant has sufficiently demonstrated a need for temporary employees. *Matter of Artee Corporation*, 18 I&N Dec. 366 (Comm'r 1982). For Defendants to require, as if by regulation, a single form of evidence that is not normally prepared by the employer in the normal course of business, as the only means of demonstrating peakload need, is arbitrary and capricious. Such a requirement is "unmoored from the purposes and concerns of the [H-2B program]." *Judulang v. Holder*, 565 U.S. 42, 64 (2011). It is also unmoored from the regulatory definition of "temporary" that applies in the H-2B program, because it does not require the agency to consider the employers' actual need for peakload workers in addition to its permanent workers (as opposed to the agency's desire to see this distinction in a particular form of payroll reporting).  A method for adjudicating H-2B applications that bears no relation to the purposes of the H-2B program is arbitrary and capricious. *Id.*

34

## VII. **PRAYER**

WHEREFORE, Plaintiffs pray that this Court:

1.      Declare unlawful and set aside Defendant DOL's decisions to deny Plaintiffs' Temporary Employment Certification Applications;

2.      Order Defendant DOL to promptly readjudicate and approve Plaintiffs' Temporary Employment Certification Applications;

3.      Grant attorney's fees and costs of Court to Plaintiffs under the Equal Access to Justice Act; and

4.      Grant such other and further relief as this Court deems proper under the circumstances.

Respectfully submitted this 3rd day of July, 2018,

*By counsel,      /s/ Thomas K. Ragland*

Thomas K. Ragland
CLARK HILL PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004
T: 202.552.2360
F: 202.552.2384
E: tragland@clarkhill.com

*Counsel for Plaintiffs*

35